EXHIBIT A

United States Department of Energy
Office of Hearings and Appeals

In the Matter of:   Edward G. Gallrein, III   )
                                              )
Filing Date:        April 28, 2014            )   Case No. WBA-13-0017
                                              )
_____          )

Issued:  August 20, 2014

**Decision and Order**

This Decision considers an appeal of an Initial Agency Decision (IAD) that the Department of Energy (DOE) Office of Hearings and Appeals (OHA) issued on April 10, 2014, regarding a complaint of retaliation that Edward G. Gallrein, III (Gallrein or the Complainant) filed under the DOE's Contractor Employee Protection Program, 10 C.F.R. Part 708, against Babcock and Wilcox Technical Services Y-12, LLC (B&W), the managing and operating (M&O) contractor for the DOE's Y-12 National Security Complex in Oak Ridge, Tennessee, and GemTech Y-12, LLC (GemTech), a subcontractor to B&W.[1]  In his complaint, Gallrein alleged that B&W and GemTech retaliated against him for engaging in activity protected under Part 708.  In the IAD, an OHA Administrative Judge denied Gallrein relief and dismissed the complaint.  Gallrein appeals that determination.  For the reasons set forth below, I have concluded that the appeal should be denied.

I.     BACKGROUND

A.     The DOE Contractor Employee Protection Program

The Department of Energy's Contractor Employee Protection Program, set forth at 10 C.F.R. Part 708, was established to safeguard "public and employee health and safety; ensur[e] compliance with applicable laws, rules, and regulations; and prevent[] fraud, mismanagement, waste and abuse" at DOE's government-owned or -leased, contractor-operated facilities.  57 Fed. Reg. 7533 (March 3, 1992).  Its primary purpose is to encourage contractor employees to disclose information which they reasonably believe exhibits unsafe, illegal, fraudulent, or wasteful practices and to protect those "whistleblowers" from consequential reprisals by their employers. 10 C.F.R. §§ 708.1, 708.5(a).

---

[1] B&W and GemTech are also jointly referred to throughout this decision as "the Respondents."

To that end, the Part 708 regulations expressly prohibit retaliation by a DOE contractor against an employee because the employee has engaged in certain protected activity, including "disclosing to a DOE official, a member of Congress, any other government official who has responsibility for the oversight of the conduct of operations at a DOE site, [his or her] employer, or any higher tier contractor, information that [the employee] reasonably believe[s] reveals (1) a substantial violation of a law, rule, or regulation; (2) a substantial and specific danger to employees or to public health or safety; or (3) fraud, gross mismanagement, gross waste of funds, or abuse of authority[.]"  10 C.F.R. § 708.5(a).

The Part 708 regulations establish administrative procedures for the processing of complaints of retaliation.  Under these regulations, OHA is responsible for investigating complaints, holding hearings, and considering appeals.  10 C.F.R. Part 708, Subpart C.  Review of an IAD, as requested by the Complainant in his appeal, is performed by the Director of the OHA.  10 C.F.R. § 708.32.

**B.     Relevant Facts and Procedural Background**

The events leading to the filing of Gallrein's Complaint are set forth in the IAD.  *Edward G. Gallrein, III,* OHA Case No. WBH-13-0017 (April 10, 2014).  With respect to this appeal, the pertinent facts are as follows.

B&W is the contractor employed by the DOE National Nuclear Security Administration (NNSA) to manage and operate the Agency's Y-12 site in Oak Ridge, Tennessee.  GemTech is a B&W subcontractor that provides staffing services to the company.  In November 2011, fulfilling a staffing task order received from B&W, GemTech hired Gallrein as a staff augmentation subcontractor to work in B&W's Program Management division.  Gallrein's responsibilities included working with B&W's Global Threat Reduction Initiative (GRTI) programs, such as GTRI's Alarm Response Training (ART) and Personal Radiation Dosimeter (PRD) courses.  His direct supervisor was J. Toby Williams, B&W Manager for Global Security and Analysis and Training and the ART Program Manager.

In 2012, Williams assigned the Complainant the task of critiquing the ART course.  After attending a presentation of the ART course in June 2012, Gallrein sent an email to Williams on July 22, 2012, providing his suggestions for various ways in which the ART course could be improved.  The Complainant forwarded the email to George Singleton, another B&W senior manager, the following day.  In August 2012, the Complainant prepared a detailed twenty-one page course review in which he provided his specific observations of the course and included a number of recommendations.  He provided the draft report to Williams, Singleton, and Joe Schwartzel, an employee of the Aquila Group, another NNSA contractor.  In January 2013, the Complainant amended the report by including two new pages which essentially repeated in summary form the observations and recommendations included throughout the body of the report.

In a March 20, 2013, email to George DeVault (Williams' supervisor), Williams, and Singleton, Gallrein again questioned the quality of the ART course, maintaining that "at some point" the

course "varied significantly" from its approved form.  In that email, he questioned whether the course certificates and credits awarded to students since that time were "defective."  He repeated this opinion in an email to Schwartzel on April 1, 2013.

Throughout April 2013, the Complainant continued to express his opinions regarding the ART and PRD courses in increasingly forceful communications to his supervisor and others.  For example, in an April 23, 2013, email to Williams, Gallrein shared his "strongest recommendation[s]" for improving the PRD course – a course that Gallrein had not attended himself.  According to the Complainant, he formulated his opinions and suggestions after reviewing a report prepared by a co-worker who attended the course and talking with that co-worker regarding the course.  In addition, the Complainant sent another email on April 23, 2013, to Williams and Schwartzel expressing his poor opinion of the GTRI training staff.

In April 2013, the Complainant also began communicating his concerns regarding the GTRI courses and the training staff to James C. Nobles, Jr., B&W's Director of Ethics and Internal Audit.  In addition to repeating his earlier critiques of the ART course, Gallrein provided Nobles with the PRD course review prepared by his co-worker, who Gallrein alleged wished to remain anonymous (despite the fact that the co-worker authored the report and submitted it to his supervisor in the normal course of his duties).  The co-worker's PRD course review purportedly identified issues similar to those that Gallrein noted with the ART course.  In addition, Gallrein alleged to Mr. Nobles that he had been subjected to "hostility," "anger," "reprisal," and/or "retribution" by other employees as a result of his critiques of the ART course.  Finally, Gallrein also described himself as a "whistleblower" in his communications with Nobles.

On May 14, 2013, the Complainant sent an email with a letter attached to DeVault, Williams, and others in which he again communicated his concerns regarding GTRI's training courses.  In the letter, Gallrein alleged that his concerns demonstrated "a possible pattern of mismanagement . . . , potential fraud, waste, and abuse, not to mention possible safety issues . . ." on the part of B&W.  The letter also set out Gallrein's allegations regarding various ways in which he had been treated unfairly during his employment and expressed his concerns that he had been subjected to "negative reactions," "resentment," and "anger/hostility."

B&W notified GemTech on May 16, 2013, that it no longer required Mr. Gallrein's services and terminated the task order under which he was retained.  GemTech terminated the Complainant's employment that day.

Gallrein filed a Part 708 complaint against B&W and GemTech on August 12, 2013, and filed an addendum to the Complaint on November 11, 2013.  The matter was referred to OHA for a hearing before an OHA Administrative Judge without an investigation on December 26, 2013.  10 C.F.R. § 708.23.  B&W and GemTech submitted motions to dismiss the complaint on February 12 and 14, 2014, respectively. [2]  The Complainant submitted a response to the motions to dismiss on March 13, 2014.

---

[2] Although GemTech's motion was initially styled a Motion for Summary Judgment, the Administrative Judge properly determined that, because the motions were to be analyzed in the same manner, he would characterize GemTech's motion as a motion to dismiss and referred to it as such throughout the IAD.

After considering the parties' submissions and other relevant evidence, the Administrative Judge issued an IAD on April 10, 2014, in which he granted the Respondent's motions to dismiss, thereby dismissing Gallrein's complaint. That IAD is the subject of this appeal.

## II. THE INITIAL AGENCY DECISION

The IAD set forth the applicable burdens of proof in Part 708 proceedings. As indicated in the IAD, it is the burden of the complainant under Part 708 to establish by a preponderance of the evidence that he or she engaged in a protected activity, and that the activity was a contributing factor to an alleged retaliation. 10 C.F.R. §§ 708.5, 708.29. Only if the complainant meets this evidentiary burden does the burden then shift to the contractor to prove by clear and convincing evidence that it would have taken the same action without the employee's protected disclosure or activity. 10 C.F.R. § 708.29.

As noted in the IAD, the Complainant maintained that he made numerous protected disclosures between March 2012 and June 2013. The various alleged disclosures are described in specific detail in the IAD and, thus, need not be set forth in their entirety here. IAD at 4-6. Generally, however, the alleged disclosures each pertain to the Complainant's overall concerns regarding the ART and PRD courses and the GTRI training staff in general.[3] *Id*.

In the IAD, before considering the merits of the Gallrein's complaint, the Administrative Judge dismissed several of the Complainant's alleged disclosures on procedural grounds. He dismissed any alleged disclosure which occurred after the Complainant's last alleged incident of reprisal – his May 16, 2013, termination – because any disclosure that occurred after the alleged retaliation could not have contributed to it. IAD at 7. In addition, the Administrative Judge dismissed certain of the Complainant's alleged protected disclosures because they were not made to a proper recipient of such disclosures, as specified in 10 C.F.R. § 708.5(a). *Id*. at 7. Finally, the Administrative Judge noted that the Complainant attempted to expand the scope of his Part 708 complaint in his response to the Respondents' motions to dismiss by alleging new protected disclosures under 10 C.F.R. § 708.5(a) and, for the first time, protected activity under 10 C.F.R. § 708.5 (b) and (c). *Id*. at 6. The Administrative Judge dismissed any alleged protected disclosure or activity that the Complainant raised for the first time in his reply to the Respondents' motions to dismiss, holding that the Complainant had had multiple opportunities to explain the basis for his complaint prior to the Respondents filing their motions to dismiss and he would not be permitted to expand the scope of his complaint indefinitely. *Id*. at 6-7.

With respect to the remaining disclosures, the Administrative Judge determined that none of the alleged disclosures fell within the ambit of Part 708. *Id*. at 8-14. In making this determination, the Administrative Judge concluded that, "even assuming the truth of the Complainant's allegations as to the relevant facts of this case," the alleged disclosures did not, as a matter of law, reveal information that the Complainant could have reasonably believed was "a substantial violation of a law, rule, or regulation;" "a substantial and specific danger to employees or to

---

[3] In fact, we find that the majority of the various alleged disclosures were not discrete disclosures at all, but rather were restatements or new characterizations of the Complainant's initial observations and complaints regarding the quality of the ART course and the competency of the GTRI training staff.

public health or safety;" or "fraud, gross mismanagement, gross waste of funds, or abuse of authority." IAD at 15; *see also* 10 C.F.R. § 708.5(a). Therefore, having concluded that the Complainant could not meet his evidentiary burden under Part 708, the Administrative Judge granted the Respondents' motions to dismiss the complaint. *Id.*

In his appeal of the IAD, the Complainant challenges the Administrative Judge's dismissal of his Part 708 complaint on various procedural and substantive grounds. He argues that the Administrative Judge erred in relying upon the Federal Rules of Civil Procedure when dismissing the complaint. He also contends that the Administrative Judge failed to consider the "implications" of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. 112-199, on this matter. The Complainant further argues that the Administrative Judge did not consider all materials in the light most favorable to him as the opposing party when ruling on the Respondents' motions to dismiss. Finally, he maintained that the Administrative Judge erred in dismissing or excluding certain allegations from the proceeding. *See* Appeal at 2.

### III. ANALYSIS

The standard of review for Part 708 appeals is well-established. Conclusions of law are reviewed *de novo*. Findings of fact, however, are subject to being overturned only if they are clearly erroneous. *See, e.g., Curtis Hall*, Case No. TBA-0042 at 5 (2008) (internal citations omitted).

As an initial matter, we find no merit in the Complainant's argument regarding the Administrative Judge's use of the Federal Rules of Civil Procedure. As noted in the IAD, the Part 708 regulations do not set forth standards for the disposition of procedural motions. In the absence of specific standards, this office has consistently modeled its procedures for deciding such motions after analogous procedures set forth in the Federal Rules of Civil Procedure. *See, e.g., Vincent E. Daniel*, Case Nos. WBH-13-0006 (2013); *Billy Joe Baptist*, Case No. TBH-0080 (2009); *Edward J. Seawalt*, Case No. VBZ-0047 (2000). In this case, the Administrative Judge likened the motions before him to a motion to dismiss for "failure to state a claim upon which relief can be granted . . ." under the Federal Rules, otherwise known as a 12(b)(6) Motion. *See* IAD at 3 (citing Fed. R. Civ. P. 12(b)(6)); *Hansford F. Johnson*, Case No. TBZ-0104 (2010) (applying standards of Fed. R. Civ. P. 12(b)(6) to motion to dismiss in a Part 708 case). Gallrein's assertion that the Administrative Judge should have applied the procedures used by other federal agencies in unrelated whistleblower proceedings is inconsistent with well-established OHA precedent. There is no error here.

Equally without merit is the Complainant's assertion that the Administrative Judge erred by not considering the WPEA when ruling on the Respondents' motions to dismiss. The WPEA, enacted in November 2012, modified a number of provisions in the federal Whistleblower Protection Act of 1989 (WPA), Pub. L. 101-12, as amended. Both the WPA and the WPEA apply only to whistleblower complaints brought by federal employees. Neither statute has any direct applicability to Part 708 proceedings, which involve only DOE contractor employees. Nonetheless, because Part 708 was modeled after the WPA and similar issues are often raised in both types of proceedings, our Part 708 decisions sometimes cite cases brought under federal whistleblower protection laws for guidance or analogous support. Gallrein appears to allege on

- 6 -

appeal that, due to our practice of citing comparable cases litigated in other fora as persuasive authority, the Administrative Judge should have also applied what Gallrein refers to as the "loosened WPEA standards which are now required to be used" in federal whistleblower cases to his evaluation of Gallrein's complaint. Appeal at 7. We disagree. Regardless of any sources that we may cite in Part 708 proceedings, we rely, in the first instance, on the express language of the regulation itself.  Therefore, even had the Administrative Judge considered the WPEA in rendering his decision, he would have reached the same result.[4] We find no error here.

We further find no error in the Administrative Judge's ultimate determination that, as a matter of law, the Complainant could not demonstrate that he engaged in activity protected under Part 708. As noted above, an employee of a DOE contractor makes a protected disclosure when he or she reveals to that employer, a higher-tier contractor, a DOE official, a member of Congress, or any other government official with oversight authority at a DOE site, information that the employee reasonably believes reveals (1) a substantial violation of a law, rule or regulation; (2) a substantial and specific danger to employees or to public health or safety; or (3) fraud, gross mismanagement, gross waste of funds, or abuse of authority. 10 C.F.R. § 708.5(a). The test of "reasonableness" is an objective one, *i.e.,* whether a reasonable person in the Complainant's position, with his level of experience, could believe that his disclosure met any of the three criteria set forth above. *See Eugene N. Kilmer*, Case No. TBH-0111 (2011); *Mark D. Siciliano*, Case No. TBH-0098 (2010); *Frank E.Isbill*, Case No. VWA-0034 (1999).

In his Complaint, Gallrein explained generally his alleged protected disclosures and the type of violation revealed by the disclosures as follows:

> [S]ubstantial violations of laws, rules, and regulations (including laws, rules, and regulations that prohibit the acceptance of government funds for products not provided; those that prohibit retaliation toward an employee who makes a good faith report of violations; those that prohibit course content that exhibits prejudice and bias on the basis of religion, national origin, race or gender; payment of government funds for meals for employees); a danger to the safety of attendees (in role playing activities); a potential security breach in holding courses offsite;

---

[4] The legislative history of the WPEA shows that the statute arose largely from Congress' frustration with the Federal Circuit's increasingly narrow interpretation of the plain language of the WPA's disclosure provisions.  *See* S. Rep. No. 112-155 (2012).  The WPA protects federal employees from retaliation for "any disclosure of information" that he or she "reasonably believes" demonstrates "a violation of any law, rule, or regulation," or "gross mismanagement, gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ."  5 U.S.C. § 2302(b)(8).  However, various Federal Circuit decisions effectively limited the scope of what disclosures were protected.  The WPEA attempted to counteract those decisions by amending the WPA to specify, for example, that an otherwise covered disclosure does not lose its protected status because, *inter alia*, it was made to the alleged wrongdoer, revealed previously known information, or was not made in writing. *See* 5 U.S.C. § 2302(f)(1).  The WPEA did not, however, make any change to the *types* of information whose disclosure may be protected, except to clearly specify that, with respect to violations of law, rule, or regulation, any disclosure of "any" such violation will suffice.  Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. 112-199 § 101(a) (amending 5 U.S.C. §§ 2302(b)(8)(A)(i), 2302(b)(8)(B)(1) by changing "a violation" to "any violation").  In his appeal, the Complainant places great emphasis on that minor alteration.  *See* Appeal at 9.  What the Complainant ignores is the fact that the parallel section of Part 708, written several years after the WPA language upon which it was modeled, expressly requires that such violations of law, rule, or regulation be "substantial" in order for their disclosure to fall within the ambit of Part 708.  10 C.F.R. § 708.5.

<blockquote>
<u>fraud</u> in the [Department of Homeland Security] approval process and acceptance of payments for courses that did not meet approved course standards and requirements; and <u>gross waste</u> of funds (not providing the paid-for time and content, and misuse of funding relating to meal payments).
</blockquote>

Comp. at 8 (emphasis in original).[5]  Even accepting as true the facts that the Complainant has presented with respect to each of his allegations, a reasonable person could not have believed that any of the disclosures revealed information of the types set forth at 10 C.F.R. § 708.5(a).

With respect to alleged disclosures of violations of law, rule, or regulation, Gallrein has not demonstrated that he held a reasonable belief that he was revealing any violation of law, rule, or regulation, let alone a substantial one, *at the time that he made the disclosures*.  The Complainant's purported disclosures revolve primarily around his critiques of the GRTI training courses and training staff.  Gallrein's first instance of critiquing the ART course – the July 22, 2012, email to Williams – is very clearly a simple assessment of possible deficiencies or areas of weakness in the course and contains his personal recommendations for improving the course.[6]  Nothing on the face of the email indicates that Gallrein believed at that time that he was reporting a violation of law, rule, or regulation.  At best, he was expressing his concern that certain aspects of the course may result in an unfavorable perception of the course by attendees or others.  Gallrein only began characterizing his communications as disclosures of wrongdoing (rather than critiques or recommendations for improvement) after he did not receive from his management and co-workers the response to his opinions that he believed was warranted.  At no point in his numerous disclosures did he state with any specificity which laws, rules, or regulations he believed had been violated.  Gallrein's vague allegations that B&W had violated laws, rules, or regulations appear to be nothing more than an attempt to frame his previous communications as protected disclosures within the meaning of Part 708.  Such *post hoc* characterizations of earlier disclosures do not rise to the level of protected disclosures under Part 708.  *See, e.g., Vincent E. Daniel*, Case No.WBH-13-0006 (2013); *Eugene N. Kilmer*, Case No. TBH-0111 (2011).

Similarly, the Complainant cannot demonstrate that he made any disclosures which he reasonably believed at the time of the disclosure revealed a substantial and specific danger to employees or to public health or safety.  The only disclosure that was even tangentially related to safety on its face was the Complainant's assertion that GTRI training staff allowed a class attendee to participate in a "role playing" segment during a training course without inquiring into the student's medical or psychological health.  According to Gallrein, this raised a safety concern

---

[5] In his response to the Respondents' motions to dismiss, the Complainant provided a table in which he identified each alleged disclosure and specified whether it revealed a substantial violation of law, rule, or regulation; a substantial and specific danger to employees or to public health or safety; fraud, gross mismanagement, gross waste of funds, or abuse of authority; or a combination thereof.

[6] In that email, Gallrein makes various routine suggestions, such as modifying the introductory remarks and posting a daily schedule.  His final recommendation in the email was that Williams "take action to stop the glamorization of alcohol, showing inappropriate videos, and cutting the course short from its approved and certified length, this is a taxpayer funded course for learning.  And most strongly recommend replacing [Youtube] videos with more professional and beneficial activities, they send a message and set an unprofessional tone and diminish the course."  *Id.*

because the student might have experienced adverse effects from participating in the exercise which, in turn, could have resulted in liability to the company.  We find that a reasonable person could not have concluded that this disclosure revealed a "substantial and specific" danger to employees or public health or safety.  Assertions of remote dangers which may or may not occur simply do not meet the requirements of Part 708.  *See Vincent E. Daniel*, WBH-13-0006 (2013) (citing *Chambers v. Dep't of the Interior*, 602 F.3d 1370); *Fred B. Hua*, Case No. TBU-0078 (2008).

Neither do vague allegations of fraud, gross mismanagement, gross waste of funds, or abuse of authority fall within the ambit of Part 708.  While the Complainant repeatedly cited those terms in making his disclosures, he continued to make imprecise, unspecific allegations, calling into question whether he reasonably believed at the time he made the disclosures that the facts he asserted revealed any such wrongdoing.  In fact, in one of his last communications to B&W management, the Complainant stated that the information he raised could indicate "possible" mismanagement, "possible" safety issues, and "potential" waste, fraud and abuse.  Comp. Ex. M.

Such speculative statements do not rise to the level of protected disclosures as specified in 10 C.F.R. § 708.5(a)(3).  Fraud is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."  *See Eugene N. Kilmer,* Case No. TBH-0111 (2011).  With respect to "gross mismanagement," we have previously held that it is:

> more than *de minimis* wrongdoing or negligence.  It does not include management decisions that are merely debatable, nor does it mean action or inaction which constitutes simple negligence or wrongdoing.  There must be an element of blatancy.  Therefore, gross mismanagement means a management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission.

*Id*. (quoting *Fred B. Hua*, Case No. TBU-0078 (2008)).  Just as gross mismanagement constitutes more than merely a debatable managerial decision, gross waste of funds constitutes a more-than-debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the government.  *See Fred B. Hua*, Case No. TBU-0078 (2008) (citing *Erika D. Jensen v. Dep't of Agriculture*, 104 M.S.P.R. 379 (2007)).  Abuse of authority "occurs when there is an arbitrary or capricious exercise of power . . . that adversely affects the rights of any person or that results in personal gain or advantage to himself or to other preferred persons." *Mark D. Siciliano*, Case No. TBH-0098 (2010).  In this case, even viewing the alleged facts in the light most favorable to the Complainant – that is, assuming that the factual underpinnings of his disclosures occurred as he represented – the Complainant has not demonstrated that he made any disclosures which a reasonable person could conclude revealed wrongdoing that falls within the definitions of fraud, gross mismanagement, gross waste of funds, or abuse of authority protected under Part 708.

Finally, Gallrein alleged on appeal that, in rendering his decision, the Administrative Judge either failed to consider or improperly dismissed some of his eighteen purported disclosures. We have found that none of the Complainant's disclosures revealed information within the ambit of Part 708.  In addition, after reviewing the complaint and the addendum to the complaint, we

conclude that the Complainant's various alleged disclosures were simply repetitions or re-characterizations of earlier allegations that the Complainant made regarding the GRTI courses and staff, his expressions of dissatisfaction with his management, or some combination thereof. Although the Administrative Judge did not identify them in the IAD as discrete disclosures, the four alleged disclosures that the Complainant now maintains the Administrative Judge improperly failed to consider each involve the Complainant's various communications with James C. Nobles, Jr., B&W's Director of Ethics and Internal Audit, the substance of which the Administrative Judge did expressly consider in the IAD.  *See* IAD at 5-6, 9-10, 11-14; *see also* Complaint at 9.  Therefore, even had the Administrative Judge expressly considered eighteen discrete disclosures, rather than the fourteen disclosures that are enumerated in the IAD, we find that he would have come to the same ultimate conclusion that none of the disclosures revealed information that the Complainant could have reasonably believed was covered under Part 708. Therefore, to the extent that there was any error in the IAD with respect to the purported omission of certain alleged disclosures from the proceeding, it was harmless and does not change our ruling.  Similarly, having determined that the Complainant's disclosures fail to meet the requirements of Part 708 on their face, we need not review the issue of whether the Administrative Judge erred in dismissing certain disclosures for not being made to a proper recipient.

## IV.    CONCLUSION

As stated above, upon consideration of the record as a whole, the Complainant has not identified error warranting reversal of the IAD.  Therefore, the appeal is denied.

It Is Therefore Ordered That:

(1) The Appeal filed by Edward G. Gallrein, III, on April 28, 2014 (Case No. WBA-13-0017), of the Initial Agency Decision issued on April 10, 2014, is hereby denied.

(2) This Appeal Decision shall become a Final Agency Decision unless a party files a petition for Secretarial review with the Office of Hearings and Appeals within 30 days after receiving this decision.  10 C.F.R. § 708.35.


Poli A. Marmolejos
Director
Office of Hearings and Appeals

Date:  August 20, 2014