UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE WHITESTONE GROUP, INC.,

        Petitioner,

   v.

U.S. DEPARTMENT OF ENERGY, et al.,

        Respondents.

Case No. 2:15-cv-3039
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on the cross-motions for summary judgment of Respondents United States Department of Energy and Dr. Ernest Moniz (collectively, the "DOE") and Petitioner The Whitestone Group, Inc. ("Whitestone"). For the following reasons, the DOE's Motion [ECF No. 25] is **GRANTED** and Whitestone's Motion [ECF No. 29] is **DENIED**.

### I. BACKGROUND

Through this action, Whitestone challenges the DOE's final agency decision granting relief to Respondent Denise Hunter under the agency's Contractor Employee Protection Program. Whitestone, a DOE subcontractor, disputes the agency's determination that Whitestone fired Hunter in retaliation for her participation in protected conduct and was, thus, entitled to back pay and attorney's fees. A Hearing Officer in the DOE's Office of Hearings and Appeals ("OHA") made the initial agency decision. That determination was later upheld on appeal to the OHA Director and again on a petition for review by the Secretary of Energy.

A.      **The DOE's Contractor Employee Protection Program (Part 708)**

The DOE established its Contractor Employee Protection Program, codified at 10 C.F.R. Part 708, to encourage contractor employees "to come forward with information that in good faith they believe evidences unsafe, unlawful, fraudulent, or wasteful practices" by giving them "protection from consequent discrimination by their employers with respect to compensation, terms, conditions, or privileges of employment." 57 Fed. Reg. 7533 (Mar. 3, 1992). Part 708 establishes the process by which the DOE considers and resolves allegations of retaliation raised by contractor employees. An employee must first file a complaint with the DOE alleging that she faced retaliation by the contractor for engaging in protected conduct. 10 C.F.R. § 708.1. As relevant here, a contractor employee's conduct is protected when she discloses to a DOE official information that she "reasonably believe[s] reveals . . . [a] substantial violation of a law, rule, or regulation." *Id.* § 708.5(a)(1). Participating in an administrative proceeding conducted under Part 708 is also protected conduct. *Id.* § 708.5(b).

After an employee has submitted her complaint, she has two options: she can request that the OHA hold a hearing on the complaint without an investigation or she can request that a hearing be held following an investigation. *Id.* § 708.21(a). At the hearing, the employee has the burden to establish by a preponderance of the evidence that she participated in protected conduct and that such conduct was a contributing factor in the alleged retaliation. *Id.* § 708.29. Once the employee has met this burden, the burden shifts to the contractor to prove by clear and convincing evidence that it would have taken the same action without the employee's participation in the protected conduct. *Id.* The hearing is conducted by a Hearing Officer (now known as an "Administrative Judge").[1] *Id.* § 708.25; *see* 78 Fed. Reg. 52,389 (Aug. 23, 2013).

---

[1] Given that Hunter's Part 708 hearing was conducted by a Hearing Officer, (*see* AR 5, at 2070 [ECF No. 21-5]), the Court uses that term throughout this decision.

2

The Hearing Officer issues an initial agency decision containing appropriate findings, conclusions, an order, and the factual basis for each finding. 10 C.F.R. § 708.30(c). The initial agency decision either grants or denies the employee's complaint; if the complaint is granted, the decision awards appropriate relief. *Id.* § 708.30(d)–(e).

Any party may appeal the initial decision to the OHA Director. *Id.* § 708.32(a). Any party dissatisfied with the OHA Director's decision may file a petition for review by the Secretary of Energy. *Id.* § 708.35(a). After receiving a petition, the Secretary (or a delegee)[2] issues the final agency decision on the employee's complaint. *Id.* § 708.35(d). The Secretary reverses or revises an appeal decision by the OHA Director only under extraordinary circumstances. *Id.*

## B. Hunter's Part 708 Complaint

In the spring of 2011, Whitestone succeeded Hunter's previous employer as the contractor providing protective services for Argonne National Labs ("ANL"). (AR 5, at 2055 [ECF No. 21-5].) By that point, Hunter had been employed for around 11 years as the Project Manager overseeing ANL's protective force, which provides physical security for the site and facilities. (*Id.*) Because of a salary dispute, Whitestone and Hunter's relationship was strained from the beginning. (*Id.*) Whitestone hired Hunter to continue as the Project Manager, but Whitestone offered her a significantly lower salary than she had received from the prior contractor. (*Id.*) This strained relationship persisted up until Hunter was fired on April 9, 2012. (*See id.* at 2055–58.)

Hunter filed her Part 708 complaint on February 27, 2012. (AR 5, at 2057.) Hunter argued that she made six protected disclosures, including (1) that Whitestone hired Lyle Headley as Operations Manager without conducting the pre-employment background check required

---

[2] The Secretary of Energy has, in fact, delegated his role in reviewing petitions for Secretarial review and issuing final agency decisions to the Deputy Secretary. *See* DOE Delegation Order No. 00-001.00F, ¶ 1.10.

3

under Whitestone's contract, (2) that Headley had taken protective force uniforms and a DOE security badge from ANL and stored them at his home, and (3) that Whitestone was billing ANL for reimbursement of costs before it had paid those expenses to vendors and sub-contractors. (*Id.* at 2059.) The Hearing Officer only analyzed these three alleged disclosures because Hunter focused on them during her hearing. (*Id.*) In her complaint, Hunter next alleged that Whitestone retaliated against her for making the protected disclosures. (*Id.*) Whitestone purportedly retaliated against her by (i) creating a work environment in which she could not effectively manage her staff, (ii) denying her vacation and sick leave, (iii) placing her on probation, and (iv) terminating her employment without cause. (*Id.*)

Hunter requested that the OHA investigate her complaint and then hold a hearing. (AR 5, at 2059.) Accordingly, the OHA Director appointed an investigator to evaluate Hunter's allegations. (*Id.*) The investigator conducted various interviews and reviewed a large number of documents before issuing a Report of Investigation ("ROI"). (*Id.*) The investigator concluded that at least one of Hunter's disclosures, as well as the filing of her Part 708 complaint, were likely protected activities. (*Id.*) The investigator also concluded that these activities were likely contributing factors to Hunter being placed on probation and, later, terminated. (*Id.*)

Hunter's complaint proceeded to a hearing. During the two-day hearing, six witnesses testified, Hunter introduced 32 exhibits into the record, and Whitestone introduced 10 exhibits. (AR 5, at 2060.) The Hearing Officer subsequently issued an initial agency decision. He concluded that Hunter had established by a preponderance of the evidence that she engaged in protected conduct (when she filed her Part 708 complaint and when she disclosed Headley's theft of equipment to ANL) and that this conduct was a contributing factor to her termination. (*See id.* at 2061–66.)

4

Next, the Hearing Officer found that Whitestone did not present clear and convincing evidence that it would have fired Hunter absent her protected conduct. (*See* AR 5, at 2066–69.) An Employee Corrective Action Statement issued to Hunter provided the official reasons for her termination, the Hearing Officer determined. (*Id.* at 2066.) The document stated: "An audit and investigation uncovered fraudulent activity and falsification of documents by Denise Hunter. Denise's conduct is unprofessional and her alleged dishonesty for her own personal benefit violated Whitestone Policy." (*Id.* (internal quotation marks omitted).) As the Hearing Officer explained, the "fraudulent activity and falsification of documents" noted in the Corrective Action Statement referred to a Temporary Employment Adjustment ("TEA") document dated December 22, 2011, on which Hunter had written, in the blank following "Accepted," the names "Bill Smith, William, Sylvia Rada" in her own handwriting. (*Id.*) If this document were properly authenticated, it would have authorized a significant hourly rate increase for Hunter, the Hearing Officer noted. (*Id.*) The Hearing Officer concluded, however, that Whitestone's stated reasons for terminating Hunter were weak and pretextual:

> I have considered the context in which Exhibit 22 appears in the record. As discussed above, Ms. Hunter contends that she provided this document to Whitestone at the request of Whitestone officials, and Mr. Conway contends that Whitestone officials first saw the documents as an attachment to Ms. Hunter's Part 708 Complaint. Despite that inconsistency, it is clear that Ms. Hunter communicated in writing with Whitestone officials concerning the temporary pay increase she sought, and that Whitestone never approved it. Exhibit 16 at 1-2; Exhibit 19 at 1. Nothing in the record indicates that Ms. Hunter provided Exhibit 22 to the DOE other than as an attachment to her Complaint. I therefore find that no Whitestone or DOE official took any action on that document, and that Ms. Hunter never submitted the document to the DOE for the purpose of obtaining the pay increase she sought nor in an effort to circumvent Whitestone's decision on that matter or otherwise defraud the company.
>
> Finally, I have reviewed Exhibit 22 and fail to see how a reasonable person could infer that the document was intended to deceive anyone, given the lack of effort to imitate anyone's signature, the fact that Mr. Conway's name is listed only as "William," and the fact that the three alleged signatures do not appear on the form

> in the correct place for approving the sought adjustment. I also note that Whitestone filed another report with the local sheriff's department in October 2012, alleging in effect a second forgery by Ms. Hunter, which the local sheriff's department reviewed and administratively closed. Exhibit 29 at 2.
>
> After considering the facts presented in this case, including the allegedly forged documents and the various sheriff's reports, I conclude that the stated reasons for terminating Ms. Hunter, fraudulent activity and falsification of documents, are weak and pretextual.

(*Id.* at 2067.) The Hearing Officer also concluded that Whitestone had motive to retaliate against Hunter and that the record lacked evidence of similarly situated employees being treated in the same manner as Hunter. (*See id.* at 2067–69.) Because Whitestone failed to meet its burden, the Hearing Officer concluded that Hunter was entitled to relief under Part 708. (*Id.* at 2069.)

After obtaining additional briefing from the parties on the issue of remedy, the Hearing Officer issued a Supplemental Decision awarding Hunter $37,855.95 in back pay, $4,230.00 in lost retirement benefits, $749.92 in accrued interest, $458.39 in travel expenses, $127,143.75 in attorney's fees, and $3,052.38 in costs. (*See* AR 5, at 2069–70, 2164.)

Whitestone appealed the Hearing Officer's decision. (AR 5, at 2167.) The OHA Director denied this appeal. (*Id.* at 2226.) Whitestone then filed a petition for secretarial review. (*Id.* at 2248.) In what became the final agency decision on Hunter's complaint, the Deputy Secretary of Energy dismissed Whitestone's petition. (*Id.* at 2283.)

### C.     Whitestone's Petition for Judicial Review

Whitestone subsequently filed its Petition for Judicial Review [ECF No. 1] in this Court. In its Petition, Whitestone highlights several alleged errors.

   A.   Whitestone contends that the agency's decision is unsupported by substantial evidence and contrary to law in its conclusion that the report of a theft and the Part 708 complaint were contributing factors in Hunter's termination. (Petition at 5

6

[ECF No. 1].) The agency's decision is, purportedly, also unsupported by evidence and contrary to law in its conclusion that Whitestone failed to offer clear and convincing evidence that it would have terminated Hunter absent her protected conduct. (*Id.*)

B. Whitestone asserts that there is no substantial evidence to support any claim that it retaliated against the DOE's Contractor Employee Protection Program. (*Id.*)

C. Whitestone asserts that there is no substantial evidence to support the relief ordered by the OHA and the DOE. (*Id.* at 6.)

D. Whitestone contends that the burden shifting approach followed by the Hearing Officer was contrary to law and administrative procedures. (*Id.*)

E. Whitestone argues that the DOE's decision is contrary to law in its conclusion that the temporal proximity between the protected disclosures and the adverse personnel action meets the burden of proof here. (*Id.*)

F. And Whitestone contends that the award of attorney's fees and back pay was excessive and contrary to law. (*Id.*)

Now before the Court are the parties' cross-motions for summary judgment [ECF Nos. 25, 29] on Whitestone's Petition.

## II. APPLICABLE STANDARDS

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to

support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own Rule 56 motion does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

**B.     The Administrative Procedure Act**

The DOE's final agency decision on Hunter's Part 708 complaint is reviewable by this Court under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. (*See* DOE Mot. at 10 [ECF No. 25]; Whitestone Combined Mot. at 11 [ECF No. 29].) The Court's review under the APA is confined to the administrative record. *Snyder Computer Sys., Inc. v. U.S. Dep't of Transp.*, 13 F. Supp. 3d 848, 860 (S.D. Ohio 2014). The Court will set aside a challenged decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if it is "unsupported by substantial evidence." 5 U.S.C. § 706(2).[3] Under this standard, "'a court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Snyder*, 13 F. Supp. 3d at 860 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). "'Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" *Id.* (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416). "'Nonetheless, the agency must articulate a rational connection between the facts found and the choice made, and must provide something in the way of documentary support for its action.'" *Id.* (quoting *GTE Midwest, Inc. v. F.C.C.*, 233 F.3d 341, 344–45 (6th Cir. 2000)).

### III.  WHITESTONE'S MOTION FOR SUMMARY JUDGMENT

In its Combined Motion (which serves as a Motion for Summary Judgment and a Response to the DOE's Motion for Summary Judgment), Whitestone argues that the DOE ignored

---

[3] The DOE disputes Whitestone's assertion that the standard of review here encompasses § 706(2)(E), which mandates that the Court set aside an agency decision "unsupported by substantial evidence." But given the DOE's concession that "there is no meaningful distinction between the 'catchall' 'arbitrary and capricious' standard in Section 706(2)(A) and the 'substantial evidence' standard in Section 706(2)(E)," (DOE Mot. for Summ. J. at 10 n.7 [ECF No. 25]), the Court will, in this decision, assume that the proper standard encompasses § 706(2)(E).

9

information when it determined that Whitestone failed to establish by clear and convincing evidence that Whitestone would have terminated Hunter absent the protected conduct. (Whitestone Combined Mot. at 12–20 [ECF No. 29].) Whitestone further argues that the DOE erred in holding that Hunter's act of reporting theft was a protected disclosure. (*Id.* at 21–23.) And Whitestone argues that the DOE erred in concluding that employers are precluded from considering the content of a Part 708 complaint when making an adverse employment decision. (*Id.* at 23–24.)

## A. Administrative Exhaustion

As an initial matter, the DOE contends that Whitestone failed to raise two of its arguments (relating to Whitestone's alleged presentation of clear and convincing evidence) during the administrative proceedings: that DOE erred (1) by failing to consider evidence of inconsistencies in Hunter's story concerning her preparation of the TEA document and (2) by failing to consider evidence that the asserted rationale for Hunter's termination was her "series of misconduct," as well as her alleged forgery of the TEA document. (DOE Combined Reply at 6 [ECF No. 32].)

When an agency's regulations require issue exhaustion in administrative appeals, courts "ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Sims v. Apfel*, 530 U.S. 103, 108 (2000); *see also LeBlanc v. E.P.A.*, 310 F. App'x 770, 776 (6th Cir. 2009) ("A reviewing court may not consider arguments that were not previously raised before an administrative agency under the doctrine of issue exhaustion or the administrative waiver doctrine."). And here, the DOE's regulations require issue exhaustion in appeals made to the OHA director and in petitions for secretarial review. 10 C.F.R. § 708.33(a) ("[T]he appellant must file a statement identifying the issues that it wishes the OHA director to review."); *id.* §

10

708.35(b) ("[T]he petitioner must file a statement identifying the issues that it wishes the Secretary to consider.").

Whitestone sufficiently argued during the administrative proceedings (in both its appeal to the OHA Director and its petition for secretarial review) that the Hearing Officer failed to consider evidence of inconsistencies in Hunter's story concerning her preparation of the TEA document. (*See* AR 5, at 2173–76, 2255–58 [ECF No. 21-5].)

By contrast, Whitestone did not argue in the administrative proceedings that the Hearing Officer failed to consider evidence that Hunter was terminated for her involvement in a series of misconduct. In its appeal to the OHA Director, Whitestone made no mention of the issue. (*See* AR 5, at 2167–76.) Whitestone, in fact, took the position in its appeal that Hunter was fired only for falsifying the TEA, arguing: "As the record below explains, contemporaneous documents demonstrate that Whitestone dismissed Ms. Hunter because of a falsified document that it discovered included in Ms. Hunter's February 2012 Complaint." (*Id.* at 2173.) Whitestone also offers no meaningful discussion of the issue in its petition for secretarial review. (*See id.* at 2248–59.) After, again, asserting that Hunter was terminated "[a]s a result of her falsification of the [TEA]," Whitestone noted in its petition: "It should first be remembered that at the time that Whitestone learned what Ms. Hunter had done, she was already on a 45-day probationary period pursuant to a correction action form dated March 8, 2012 (which had placed her on probation from March 2, 2012, through April 15, 2012)." (*Id.* at 2258.) Whitestone then followed this passing reference to probation with a second assertion that she was terminated for allegedly forging the TEA: "Ms. Hunter's official 'Employee Separation Form' notes that Ms. Hunter was not eligible for rehire, and for the explanation specifically notes the document falsification that was the ground for her immediate termination: 'criminal investigation regarding forgery +

11

falsification of documents.'" (*Id.*) Because Whitestone did not, during the administrative proceedings, raise its argument about Hunter's alleged series of misconduct, that argument is foreclosed here. *See LeBlanc*, 310 F. App'x at 776.

**B.      Whether Whitestone Has Established by Clear and Convincing Evidence that it Would Have Made the Same Decision in the Absence of the Protected Conduct**

In its Combined Motion, Whitestone argues that the DOE ignored various pieces of evidence when it concluded that Whitestone failed to establish by clear and convincing evidence that it would have terminated Hunter absent her protected conduct. Whitestone claims that the DOE ignored an email sent by Whitestone's Vice President of Operations, Glenn First, in late February 2012, which states, in part: "In speaking with Bill [Smith] and William [Conway, Whitestone's Regional Manager,] at no time was it expressly conveyed that the increase in your salary was approved." (Whitestone Combined Mot. at 15 [ECF No. 29].) The DOE also purportedly ignored Hunter's alleged inconsistent statements, including her statement to the DOE that Whitestone "refused to honor a modification that they signed and directed me to set up," her assertion that she wrote the TEA and signed it at the direction of Whitestone officials during a conference call, and her admission that it would be "crazy" for Whitestone to ask her to sign the document and that she didn't know why they would need her to do so. (*Id.* at 13–15.)

To begin, the Court is unable to conclude that the DOE ignored the information that Whitestone highlights in its Combined Motion. Granted, the Hearing Officer did not, in the initial agency decision, quote or directly reference First's email or Hunter's alleged inconsistent statements. (*See* AR 5, at 2054–70 [ECF No. 21-5].) The Hearing Officer explicitly recognized, however, the inconsistency between Hunter's and Whitestone's explanations of the TEA document:

12

> How Whitestone obtained this document is disputed. Ms. Hunter claims that, in a telephone call, Mr. Conway and Mr. First asked her who would be authorized to approve Whitestone's offer of temporary rate modification to Ms. Hunter, and she replied that Bill Smith, William Conway, or Sylvia Rada could do so. According to Ms. Hunter, they then asked that she write down those names and send them during the call, which she did. Tr. At 155. On the other hand, Mr. Conway does not recall that telephone call, and contends that no one at Whitestone saw this document until they reviewed Ms. Hunter's Part 708 complaint, to which it was an attachment. *Id.* at 574-75.

(*Id.* at 2058.) And the Hearing Officer again recognized the inconsistency when he considered whether Whitestone would have terminated Hunter absent her protected conduct: "As discussed above, Ms. Hunter contends that she provided this document at the request of Whitestone officials, and Mr. Conway contends that Whitestone officials first saw the document as an attachment to Ms. Hunter's Part 708 Copmplaint." (*Id.* at 2067.) The Hearing Officer then explained that he found Whitestone's position unconvincing "[d]espite that inconsistency." (*Id.*) The Hearing Officer, moreover, indicated that he "considered the context in which Exhibit 22 [the TEA document] appears in the record" and that he had "consider[ed] the facts presented in this case, including the allegedly forged documents and the various sheriff's reports." (*Id.*)

But even if the Hearing Officer ignored the information highlighted by Whitestone, this fact would not render the agency's decision arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Nor would it demonstrate that the agency's decision is unsupported by substantial evidence. The DOE, through its initial decision (quoted in part earlier) and final decision, has articulated a rational connection between the facts of the case and its determination that Whitestone did not establish by clear and convincing evidence that it would have terminated Hunter absent her protected conduct. (*See* AR 5, at 2066–69, 2224–26.)

13

### C. Whether Hunter's Act of Reporting Theft Is a Protected Disclosure

Whitestone next argues that the DOE erred in holding that Hunter engaged in a protected disclosure when she reported a theft to ANL. (Whitestone Combined Mot. at 21–23 [ECF No. 29].) The Court disagrees.

For background, Whitestone hired Lyle Headley in April 2011 as the Operations Manager for ANL's protective force. (AR 5, at 2056 [ECF No. 21-5].) Whitestone terminated Headley in December 2011 after he was belatedly subjected to a pre-employment screening that revealed information that disqualified him from holding his position. (*Id.*) On April 1, 2012, Hunter received an email from Headley's sister stating that Headley was storing DOE uniforms and DOE-issued badges at their parents' home. (*Id.* at 2057.) Hunter spoke with Headley's sister and then forwarded the sister's email to William Conway, Hunter's direct supervisor at Whitestone. (*Id.*) In her communication to Conway, Hunter noted that the numbers on the badges taken by Headley did not match any badge numbers assigned to Whitestone's protective force. (*Id.*) Hunter forwarded the email from Headley's sister to Sandra Guendling at ANL. (*Id.*) And Hunter also notified Whitestone's Vice President of Operations, Glenn First, as well as Tom Gradle of the DOE. (*Id.* at 2057–58.)

Whitestone contends that Hunter's act of reporting the theft to ANL was part of Hunter's job duties and, thus, not protected conduct. (Whitestone Combined Mot. at 21.) Whitestone also avers that the theft report cannot be protected conduct because Hunter did not believe, when making the report, that a substantial violation of any law or rule had occurred. (*Id.* at 22.)

Whitestone cites *Kahn v. Department of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010), a case involving an appeal from the Merit Systems Protection Board under the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), for the proposition that "an employee must

14

communicate . . . information either outside the scope of his normal duties or outside of normal channels to qualify as a protected disclosure." Whitestone, however, does not point to any authority suggesting that this standard applies to claims brought under the DOE's Contractor Employee Protection Program (i.e., Part 708). Nor does Whitestone point to authority suggesting that this standard should apply to any claims outside of those brought under the WPA. "[A]n agency's interpretation of [its own] regulation must be given controlling weight unless it is 'plainly erroneous or inconsistent with the regulation.'" *Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 409 (6th Cir. 2007) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). Consequently, even if the Court were to conclude that Hunter's job duties include reporting theft, given the dearth of authority to suggest that the standard identified in *Kahn* applies to Part 708, the Court could not conclude that the DOE erred.

As to Whitestone's second argument, the Court concludes that the DOE did not arrive at an arbitrary or capricious decision—or a decision unsupported by substantial evidence—when it concluded that Hunter believed she had revealed a substantial violation of law. Whitestone focuses on the text of the email that Hunter sent Guendling at ANL, but as the Hearing Officer explained, substantial evidence supports the agency's conclusion:

> At the hearing, Ms. Hunter testified as to the importance of her disclosure. She stated that she knew a report must be filed concerning stolen property. She further stated that the uniforms and badges, if worn, could allow an unauthorized person, such as Mr. Headley, to impersonate a protective force member and thereby gain access to controlled areas. Finally, she believed that Mr. Headley might attempt to do so, particularly in light of his sister's statement that he wore uniforms and badges in public. Tr. At 72-73. Ms. Hunter's testimony convinces me that she reasonably believed that her disclosures of Mr. Headley's theft revealed a substantial violation of law.

(AR 5, at 2061–62.)

15

### D. Whether Whitestone Could Consider the Content of a Part 708 Complaint When Making an Adverse Employment Decision

Whitestone contends that the DOE erred when it "determined that Whitestone had not met its burden of proving by clear and convincing evidence that it would have terminated Ms. Hunter absent the protected disclosure because [Whitestone] relied on information it discovered as part of [Hunter's] Part 708 Complaint." (Whitestone Combined Mot. at 24 [ECF No. 29].) Whitestone's argument fails.

In the appeal decision, the OHA Director stated:

> We are not persuaded that Hunter's preparation of a document for her Part 708 Complaint can be deemed to be misconduct that would subject Hunter to termination by Whitestone. To the extent the document was prepared solely to support an argument advanced by Hunter in her Part 708 Complaint, the document essentially became part of the Complaint itself. The Part 708 regulations prohibit an employer from retaliating against an employee for filing a complaint. We believe that this prohibition of non-retaliation for filing a Part 708 complaint would extent to the document at issue, where there was no forgery or fraud relating to the preparation of the document and it was presented solely as an attachment to the Complaint.

(AR 5, at 2225–26 [ECF No. 21-5].) But immediately before this paragraph, the OHA Director had reviewed the Hearing Officer's conclusions. (*Id.* at 2224–25.) Summarizing that review, the OHA Director explained: "[W]e reject Whitestone's argument that [it] has presented 'clear and convincing evidence' that [it] had sufficient reasons to terminate Hunter, even if we accept Whitestone's claim that Hunter prepared the TEA Document solely to support her February 27, 2012, Part 708 Complaint." (*Id.* at 2225.) The DOE, in other words, supported its determination using two rationales. Whitestone only attacks one of the DOE's rationales—that Whitestone could not terminate Hunter based on information it acquired through Hunter's Part 708 complaint. So even if the Court were to conclude that the DOE erred on that issue, that error would not alter the agency's decision.

16

Whitestone's argument fails for a second reason. Whitestone has not identified legal authority sufficient to demonstrate that the DOE's interpretation of its own regulation—Part 708—is plainly erroneous or inconsistent with the regulation. *See Battle Creek*, 498 F.3d at 409. None of the cases cited by Whitestone interpret Part 708. (*See* Whitestone Combined Mot. at 24.) Absent this showing, the Court cannot conclude that the DOE erred in determining that the "prohibition of non-retaliation for filing a Part 708 complaint . . . extend[s] to the [TEA] document." (*See* AR 5, at 2226.)

To summarize, Whitestone has moved for summary judgment on several of the claims asserted in its Petition for Judicial Review.[4] But because Whitestone has failed to demonstrate that the DOE's decision is unsupported by substantial evidence or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the Court denies Whitestone summary judgment on those claims.

## IV. THE DEPARTMENT OF ENERGY'S MOTION FOR SUMMARY JUDGMENT

The DOE has moved for summary judgment on each of the claims asserted in Whitestone's Petition for Judicial Review. (*See* DOE Mot. at 1 [ECF No. 25].)

As an initial matter, the Court concludes that the DOE is entitled to summary judgment on each of the claims that Whitestone asserted in its Combined Motion. For the same reasons as outlined above, the DOE's final agency decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Nor is the DOE's decision unsupported by substantial evidence. The Court turns now to the DOE's arguments.

---

[4] In its Petition for Judicial Review, Whitestone raised several other claims, including a claim challenging the reasonableness of the attorney's fees and back pay that the DOE awarded Hunter. (Petition at 6 [ECF No. 1].) As noted below, Whitestone has abandoned these claims by both failing to defend them in response to the DOE's Motion for Summary Judgment and by failing to dispute the DOE's assertion that Whitestone abandoned the claims. Given that Whitestone has neither defended these claims nor moved for summary judgment on them, the Court need not address their merits.

17

The DOE has identified six claims from Whitestone's Petition that Whitestone purportedly failed to address in its response to the DOE's Motion for Summary Judgment. Whitestone responds by arguing that it addressed three of the six claims in its Combined Motion (which, as noted earlier, also functions as a response): (1) that the DOE's decision was unsupported by substantial evidence and contrary to law in its conclusion that Hunter's report of equipment theft was a contributing factor in her termination; (2) that the DOE's decision was unsupported by substantial evidence and contrary to law in its conclusion that Hunter's Part 708 complaint was a contributing factor to her termination; and (3) that there was no substantial evidence to support the relief ordered by the DOE. (Whitestone Reply at 1–2 [ECF No. 33].)

A party abandons a claim if it fails to address or support the claim in response to a motion for summary judgment. *Bauer v. Cnty. of Saginaw*, 111 F. Supp. 3d 767, 782 (E.D. Mich. 2015); *see Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (concluding that, when a plaintiff did not properly respond to arguments asserted by a defendant's motion for summary judgment as to two claims, "the District Court did not err when it found that the [plaintiff] abandoned [those] claims").

As to the three claims Whitestone insists it addressed in its Combined Motion, the Court agrees that the claims are not abandoned. (*See* Whitestone Combined Mot. at 12–25 [ECF No. 29].) This conclusion, however, does little to benefit Whitestone: the Court already analyzed the arguments Whitestone asserts in support of these claims and has determined that the claims lack merit.

And as to the three remaining claims—that Whitestone does not allege to have addressed in its Combined Motion—the Court concludes that those claims are abandoned. Those claims are: (i) that the burden shifting approach followed by the Hearing Officer was contrary to law

18

and administrative procedures; (ii) that the DOE's decision was contrary to law where it determined that the temporal proximity between protected disclosures and adverse personnel actions meets the burden of proof; and (iii) that the DOE's award of attorney's fees and back pay was excessive and contrary to law. (*See* DOE Combined Reply at 1–2 [ECF No. 32]; Whitestone Reply at 1–3 [ECF No. 33].) The DOE is entitled to summary judgment on Whitestone's abandoned claims. *See Bauer*, 111 F. Supp. 3d at 782; *Clark*, 178 F. App'x at 524–25.

## V.  CONCLUSION

For these reasons, the DOE's Motion for Summary Judgment [ECF No. 25] is **GRANTED** and Whitestone's Motion for Summary Judgment [ECF No. 29] is **DENIED**. The Court **AFFIRMS** the DOE's final agency decision and **DIRECTS** the Clerk to enter final judgment in this matter.

**IT IS SO ORDERED.**

3-31-2017
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE

19